**CALIFORNIA FEDERAL LIFE
INSURANCE COMPANY,
Plaintiff-Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Defendant-Appellee.**

No. 81–7208.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 1, 1982.

Decided June 25, 1982.

Thomas R. Sheppard, Sheppard, Mullin,
Richter & Hampton, Los Angeles, Cal., for
plaintiff-appellant.

Richard Farber, Washington, D. C., for defendant-appellee.

Before WALLACE, NELSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

California Federal Life Insurance Co. appeals from a decision of the Tax Court determining the income tax ramifications of the exchange of Swiss francs for U. S. Double Eagle gold coins. 76 T.C. 107. On March 31, 1975, California Federal exchanged 110,079.9 Swiss francs for 175 United States Double Eagle $20 gold coins. The aggregate fair market value of the gold coins received was $43,426.52 (U.S.)[1], each coin being worth from $275 to $18,000.[2] California Federal, however, accorded the gold coins only their face value of $3,500 and consequently claimed a substantial capital loss on the transaction. The Tax Court determined that under I.R.C. § 1001(b), the measure of the "amount realized" on the exchange of the Swiss francs was the fair market value of the gold coins, not their face value. 76 T.C. at 112. It therefore held that there had been a gain on the transaction. The Tax Court also determined that the Swiss francs and gold coins were not of "like kind", and therefore the gain on the exchange was not qualified for nonrecognition under I.R.C. § 1031. 76 T.C. at 115. California Federal appeals both rulings. We affirm.

## I.

I.R.C. § 1001(b) provides: "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." Relying principally on its premise that the gold coins are "legal tender," California Federal concludes that the coins are "money" within the meaning of § 1001, not "property." Taxpayer argues that as "money" they must be treated at face, not at market value.

■ We conclude that the Tax Court properly rejected this argument. Section 1001(b) is clearly intended to permit a realistic assessment of the economic gain or loss attending a sale or exchange. That purpose would be frustrated by an interpretation that compelled gold coins to be treated at a fraction of their true value. We therefore conclude that "money" in § 1001(b) refers to the currently circulating medium of exchange, while "property" includes coins that have, by reason of their value to collectors or the intrinsic worth of their contents, a fair market value in excess of their face value. Because the key element is the excess of market over face value, it is immaterial that such coins may be legal tender at their face value.[3] In ruling as we do, we follow closely another panel of this court that has recently held that rare coins distributed to shareholders as dividends must be valued at market rather than face value for purposes of I.R.C. § 301.[4] *Cordner v. United States*, 671 F.2d 367 (9th Cir. 1982); cf. *Joslin v. United States*, 666 F.2d 1306, 1307 (10th Cir. 1981) (per curiam) (silver dollars received for legal services are taxed at fair market value).

---

1. The aggregate fair market value of the gold coins was established at the aggregate currency exchange value of the 110,079.9 Swiss francs. 76 T.C. at 108.

2. Each coin's value was partly attributable to its bullion content and partly to its numismatic value. The numismatic component of its value depended upon the coin's mint date, its type, its condition and its rarity.

3. Because we agree with the Tax Court's conclusion that the technical status of the coins as "legal tender" is immaterial, see 76 T.C. 111–12, we need not decide the issue that California Federal considers to be crucial: i.e., "whether the suspension of circulation of gold coins served to repeal 31 U.S.C. § 457, which specified that gold coins are legal tender." Appellant's brief at 15.

4. I.R.C. § 301(b)(1) provides, in pertinent part:
   General rule.—For purposes of this section, the amount of any distribution shall be
   (A) Noncorporate Distributees—If the shareholder is not a corporation, *the amount of money received,* plus *the fair market value of the other property received.*
   [emphasis added]

II.

The remaining question is whether the exchange of Swiss francs for U. S. Double Eagle gold coins constituted an exchange of property of "like kind" within the meaning of I.R.C. § 1031, which provides that gain from such an exchange shall not be recognized.[5] The Tax Court concluded that the francs and the coins were not of "like kind." 76 T.C. at 113–115.

[redacted] The test for determining whether exchanged properties are of like kind is whether the property is of the same nature or character; a mere difference in grade or quality of the properties does not disqualify the exchange. Treas.Regs. § 1.1031(a)–1(b); *Estate of Meyer v. Commissioner*, 503 F.2d 556 (9th Cir. 1974) (per curiam), *aff'g* 58 T.C. 311 (1972) (limited partnership interest and general partnership interest in real estate firm are not like kind property); *Koch v. Commissioner*, 71 T.C. 54, 64 (1978), *acq.* C.B. 1979–2, 2. California Federal relies upon cases holding that exchanges of real property with considerably different characteristics have been treated as of like kind. *Commissioner v. Crichton*, 122 F.2d 181 (5th Cir. 1941); *Koch v. Commissioner, supra.* The result in these cases is supported by Treas.Reg. § 1.1031(a)–1(b), which provides: "[T]he fact that any real estate involved is improved is not material, for that fact relates only to the grade or quality and not its class or kind." Thus exchange of city real estate for a ranch or farm is an exchange of property of "like kind." Treas.Reg. § 1.1031(a)–1(c)(2).

[redacted] We conclude, however, that the Tax Court did not err in refusing to apply the lenient treatment of real estate exchanges to the exchange of personal property in the present case. Congress has suggested by an amendment to § 1031 that personal property is to be accorded different treatment; the amendment provides: "[L]ivestock of different sexes are not property of like kind." Tax Reform Act of 1969, Pub.L.No. 91–172, § 212(c), 83 Stat. 487, 571 (Codified at I.R.C. 1031(e)). The legislative history of that amendment indicates that its proponents viewed it as declaratory of Congress' original intent in passing § 1031 and intended it to overcome too lenient interpretations of the "like kind" requirement. S.Rep.No.91–552, 91st Cong., 1st Sess. 102 (1969), *reprinted in* [1969] U.S.Code Cong. & Ad.News 2027, 2132.

[redacted] The Tax Court was therefore justified in ruling that gold coins and Swiss francs were not of like kind. The coins are exchanged in the marketplace only by numismatists, and are valued primarily for their rarity, as collector items. The Swiss francs, on the other hand, are currently circulating currency, and to their investors they represent investments in the Swiss national economy. The conclusion that these two classes of property were not of like kind is one of law reviewable as such, *Estate of Meyer v. Commissioner*, 503 F.2d at 557, but the interpretation of the Tax Court is entitled to respect because of its special expertise in the field. *Cruttenden v. Commissioner*, 644 F.2d 1368, 1374 (9th Cir. 1981); *Allstate Savings & Loan Association v. Commissioner*, 600 F.2d 760, 762 (9th Cir. 1979). In this case, we conclude that the

5. I.R.C. § 1031 provides:

(a) Nonrecognition of Gain or Loss from Exchanges Solely in Kind.—
No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidence of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

(b) Gain from Exchanges not Solely in Kind.—
[Text omitted].
(c) Loss from Exchanges not Solely in Kind.—
[Text omitted].
(d) Basis.
[Text omitted].
(e) Exchanges of Livestock of Different Sexes.—
For purposes of this section, livestock of different sexes are not property of a like kind.

interpretation of § 1031 adopted by the Tax Court was reasonable and must be upheld.

AFFIRMED.